## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

MALVIN PALMER,

Defendant.

**Criminal No. 04cr355-08 (CKK)**
**(Civil Action No. 12-1745)**

### MEMORANDUM OPINION
(March 30, 2015)

On July 15, 2005, Malvin Palmer ("Palmer") was convicted by a jury in this Court of: conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity ("Count I"), including the armed robbery of the Bank of America located at 5911 Blair Road, N.W., Washington, D.C., on or about January 22, 2004 ("Racketeering Act 1") and the armed robbery of the Riggs Bank located at 7601 Georgia Avenue, N.W., Washington, D.C., on or about March 5, 2004 ("Racketeering Act 2"); conspiracy to commit offenses against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation ("Count II"); armed robbery of the Bank of America on or about January 22, 2004 ("Count III"); using and carrying a firearm during and in relation to a crime of violence on or about January 22, 2004 ("Count IV"); unlawful possession on or about January 22, 2004, of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year ("Count VI"); armed robbery of the Riggs Bank on or about March 5, 2004 ("Count VII"); using and carrying a firearm during an in relation to a crime of violence on or about March 5, 2004 ("Count VIII"); and unlawful possession on or about March 5, 2004, of a firearm by a person convicted of a

crime punishable by imprisonment for a term exceeding one year ("Count IX").  Presently before

the Court is Palmer's *pro se* [785] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence.  Upon a searching review of the parties' submissions,[1] the relevant authorities,

and the record as a whole, the Court finds no grounds for setting aside Palmer's conviction and

sentence at this time.  Accordingly, the Court shall DENY Palmer's [785] Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

## I.  BACKGROUND

On August 3, 2004, a federal grand jury indicted seven of Palmer's codefendants in

connection with a string of bank robberies that occurred in the District of Columbia and

Maryland.  Indictment (Aug. 3, 2004).  On August 5, 2004, Palmer was added as a codefendant

in the instant action by virtue of a superseding indictment. Superseding Indictment (Aug. 5,

2004). The United States Court of Appeals for District of Columbia Circuit ("D.C. Circuit")

described the factual scenario:

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents: Def.'s Mot. to Vacate Sentence ("Def.'s Mot."), ECF No. [785]; Def.'s Memo. in Support of Mot. to Vacate Sentence ("Def.'s Memo."), ECF No. [786]; Def.'s Amendment to Mot. to Vacate Sentence ("Def.'s Amendment"), ECF No. [793]; Govt.'s Opp'n to Def.'s Mot. to Vacate Sentence ("Govt.'s Opp'n"), ECF No. [800]; Def.'s Reply Brief ("Def.'s Reply"), ECF No [816]; and transcripts of status hearings and trial. Pursuant to the Court's [866] Order of February 25, 2015, the Court notified Defendant Malvin Palmer that it had not received page 4 of his [786] Memorandum of Law in Aid of Petitioner Title 28 Section 2255 Motion to Vacate, Set Aside or Correct Sentence.  Pursuant to that Order, the Court directed Palmer to file page 4 of the Memorandum or, in the alternative, a Notice indicating that he prefers that the Court proceed to address the merits of his arguments without page 4 of the Memorandum as filed by no later than March 25, 2015.  The Court indicated that it would proceed to rule on Palmer's § 2255 Motion if Palmer did not file either page 4 of the Memorandum or a Notice as directed by March 25, 2015, because it generally understood Palmer's arguments based on the pleadings as filed.  As of the date of this Memorandum Opinion, Palmer has not filed any documents responsive to the Court's [866] Order. Accordingly, the Court shall proceed to address the merits of Palmer's arguments.

2

> [Palmer and his codefendants] indulged in a violent crime spree throughout the District of Columbia metro area that lasted for nearly a year and a half. Appellants, who began by cultivating and selling marijuana, evolved into a ring that committed armed bank robberies, using stolen vehicles to travel to the targeted banks and make their escapes. By the summer of 2004, the robbers had developed a signature style. The gang wore bullet-proof vests, masks, and gloves, and relied on superior fire power, preferring to use military weapons like AK-47s instead of handguns because they surmised the metropolitan police "wouldn't respond" when Appellants "robb[ed] banks with assault weapons." The gang made use of several stolen vehicles, strategically placed along the get-away-route, for each robbery. The robbers would serially abandon the vehicles, often torching them in an attempt to destroy any forensic evidence that might be left behind.

*United States v. Burwell*, 642 F.3d 1062, 1064-65 (D.C. Cir. 2011).  The matter proceeded to trial in this Court, and Palmer was tried alongside five other codefendants.  On July 15, 2005, a jury convicted Palmer on all eight counts upon which he was charged in the indictment.  Verdict Form, ECF No. [476].

On May 12, 2006, this Court sentenced Palmer to 92 months of imprisonment on Count I, 60 months of imprisonment on Count II, 92 months of imprisonment on Count III, 92 months of imprisonment on Count VI, 92 months of imprisonment on Count VII, and 92 months of imprisonment on Count IX to run concurrently to each other.  The Court also sentenced Palmer to 120 months of imprisonment on Count IV and 300 months of imprisonment on Count VIII to run consecutively to each other and to Counts I, II, III, VI, VII, and IX.  *See* Judgment in a Criminal Case, ECF No. [636].  Palmer filed a timely appeal of his conviction and on April 29, 2011, the D.C. Circuit affirmed Palmer's conviction in a published opinion.  *United States v. Burwell*, 642 F.3d 1062 (D.C. Cir. 2011), *aff'd in part en banc*, 690 F.3d 500 (D.C. Cir. 2012).  Palmer filed a petition for writ of certiorari which was denied by the Supreme Court of the United States.  *Palmer v. United States*, -- U.S. --, 132 S. Ct. 329 (2011).  Palmer currently is

serving his sentence.

Pending before the Court is Palmer's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Palmer's motion is premised on ineffective assistance of counsel claims related to his trial counsel, Atiq R. Ahmed, and his appellate counsel, Allen H. Orenberg. Specifically, Palmer claims that his counsel rendered him ineffective assistance by: (1) failing to raise a duplicity challenge to the indictment; (2) failing to challenge an alleged constructive amendment to the indictment; and (3) failing to raise a Confrontation Clause challenge to certain evidence.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal.  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).

4

A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001) (citation omitted).

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of . . . counsel's other litigation decisions." *Strickland*, 466 U.S. at 691. In evaluating ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.  Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### III. DISCUSSION

A district court may deny a Section 2255 motion without a hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "'The decision whether to hold a hearing is committed to the district court's discretion, particularly when, as here, the judge who is considering the § 2255 motion also presided over the proceeding in which the petitioner claims to have been prejudiced.'" *United States v. Orleans-Lindsey*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008), *appeal dismissed*, No. 08-3089, 2009 U.S. App. LEXIS 20833 (D.C. Cir. Sept. 18, 2009) (quoting *Fears v. United States*, No. Civ. A. 06-0086 (JDB), 2006 WL 763080, at *2 (D.D.C. Mar. 24, 2006) (citations omitted)); *see also United States v. Agramonte*, 366 F. Supp. 2d 83, 85 (D.D.C. 2005), *aff'd*, 304 Fed. App'x 877 (D.C. Cir. 2008).  "The judge's own recollection of the events at issue may enable him summarily to deny a Section 2255 motion." *Agramonte*, 366 F. Supp. 2d at 85 (citing *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992)).  To warrant a hearing, the petitioner's Section 2255 motion must "raise[] 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection.'" *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Based on a thorough review of the parties' pleadings and the entire record in the criminal proceeding, the Court finds that there is no need for an evidentiary hearing on the instant motion at this time.  As explained below, Palmer has not proffered detailed and factual allegations outside of the record such that a hearing is required on the issues raised in his motion. Accordingly, the Court shall render its findings based on the parties' pleadings and the record.

Specifically, Palmer raises three ineffective assistance claims related to his counsel allegedly: (1) failing to raise a duplicity challenge to the indictment; (2) failing to challenge an alleged constructive amendment to the indictment; and (3) failing to raise a Confrontation Clause challenge to certain evidence.  The Court shall address each claim in turn.[2]

## A. *Duplicity Challenge to Counts IV and VIII*

Palmer first contends that he was rendered ineffective assistance because his counsel failed to object to Counts IV and VIII of the indictment as duplicitous.  Specifically, Palmer argues that "trial and appellate counsel[] is clearly constitutionally defective for their fatal failure to object and raise on direct appeal duplicitous charges as to count 4, 8, 11, and 16."  Def.'s Memo. at 9.  Palmer asserts that Counts IV and VIII were duplicitous based on the language of the indictment, coupled with the jury instructions and verdict form.[3]  *Id.*  at 3-5.

The Court finds that Palmer's ineffective assistance of counsel claim fails because his

---

[2] The Court notes that Palmer appears to have inadvertently included a page from the "Issues Presented" section of his appellate brief at the end of his § 2255 motion.  *Compare* Def.'s Mot. at 14 *with* Jt. Brief of the Appellants at xiv, *Burwell et al v. United States*, No. 06-3071 (D.C. Cir. Oct. 2, 2009).  Palmer raises no additional arguments as to any of these issues in his pleadings and Palmer's conviction was affirmed by the D.C. Circuit.  *See United States v. Burwell*, 642 F.3d 1062, 1071 (D.C. Cir. 2011).

[3] The Court shall only address this claim as it relates to Counts IV and VIII, because Palmer was not charged with or convicted of Counts XI and XVI.

trial counsel did challenge Counts IV and VIII of the indictment as duplicitous. "Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999). "'The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both.'" *United States v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997) (quoting *United States v. Duncan*, 850 F.2d 1104, 1108 (6th Cir. 1988)). "'A general verdict of guilty will not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all.'" *United States v. Correa-Ventura*, 6 F.3d 1070, 1081 (5th Cir. 1993) (quoting 1 Charles A. Wright, Federal Practice and Procedure: Criminal 2D § 142 at 475 (1982)).

Here, counsel for Palmer's codefendant filed on February 1, 2005, a Joint Defense Motion to Dismiss the Indictment due to Multiplicitous and Duplicitous Charging, which was considered on behalf of all the codefendants. Sealed Jt. Def. Mot. to Dismiss Indictment, ECF No. [172]. In that motion, Palmer and his codefendants challenged the duplicity of Counts IV and VIII of the indictment.[4] *Id.* at 6. The Court addressed the issue of "whether the different

---

[4] The Court notes that the codefendants in their motion and the Court in its Memorandum Opinion addressing that motion adopted the numbering scheme for the counts from an earlier Indictment filed on November 9, 2004. Memo. Op. (Mar. 16, 2005), at 2 n.1. In this Memorandum Opinion, the Court uses the numbering scheme from the Indictment filed on February 15, 2005, because it was the indictment under which Palmer and his codefendants were tried. The Court notes that Count IV corresponds to the charge in violation of section 924(c) for the January 21, 2004, armed robbery in both indictments. *Compare* Superseding Indictment (Nov. 9, 2004), at 18 *with* Superseding Indictment (Feb. 15, 2005), at 18. However, the charge in violation of section 924(c) for the March 5, 2004, armed robbery was Count VIII of the February 15, 2005, indictment, and Count IX of the November 9, 2004, indictment. *Compare* Superseding Indictment (Nov. 9, 2004), at 23 *with* Superseding Indictment (Feb. 15, 2005), at 22.

alternatives under 18 U.S.C. § 924(c) -- e.g., use or carry, possess in furtherance of, brandish, or discharge a firearm -- are separate offenses, as the different alternatives carry different punishments." Memo. Op. (Mar. 16, 2005), at 19.  Ultimately, the Court noted that there may be a duplicity issue with both Counts IV and VIII because the relevant provisions of the charged offenses criminalize two separate offenses: (1) using or carrying a firearm during and in relation to an applicable crime of violence, and (2) possessing a firearm in furtherance of an applicable crime of violence.  *Id.* at 20.  However, the Court found that the Government could proceed with these charges by employing use of a special verdict form to ensure that the jury considered the different alternatives separately.  *Id.*  Accordingly, this issue was raised by Palmer's counsel through this motion and, thus, any claim for ineffective assistance of trial counsel as related to the language of the indictment does not have merit.[5]  Nonetheless, in light of its holding on this issue, the Court shall turn to Palmer's claim that his trial counsel rendered ineffective assistance by failing to object to the jury instructions and verdict form.

At the relevant time period, 18 U.S.C. § 924(c)(1)(A) criminalized and provided certain sentencing requirements for "any person who, *during and in relation to* any crime of violence . . .

---

[5] The Court notes that in his supplement to his § 2255 motion, Palmer indicates that his counsel did not move the Court for a "Bill of Particular to specify the offense charged."  Def.'s Amendment to Mot. to Vacate Sentence, at 3.  While Palmer did not request a bill of particulars in the instant action, two of his codefendants did make that request.  *See* Memo. Op. (Mar. 16, 2005), at 23-25, ECF No. [437]. The Court denied those requests, explaining: "The Court declines to exercise its discretion and concludes that a bill of particulars is not necessary in this case. The indictment sufficiently sets out each of the violations involved, the dates of those violations, and the statutes involved."  *Id.* at 25.  Based on the reasoning in its Memorandum Opinion related to Palmer's codefendants, the Court finds that Palmer has not established that he was prejudiced by his counsel's failure to request a bill of particulars in this case given the Court's holding that the indictment was sufficient to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges. *See id.* at 24 (quoting *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)).

. , uses or carries a firearm, or who, *in furtherance of any such crime*, possesses a firearm . . . ."
*Id.* (emphasis added).   Pursuant to the indictment, it was charged under Count IV that Palmer
"knowingly used, brandished, carried and possessed a firearm, that is, a machinegun, *during and
in relation to* and *in furtherance of* a crime of violence . . . specifically, armed bank robbery as
charged in Count Three of this Indictment."   Superseding Indictment (Feb. 15, 2005), at 18.
Count VIII used similar language related to the armed bank robbery as charged in Count VII of
the indictment.  *See id.* at 22.

As previously discussed, this Court in its March 16, 2005, Memorandum Opinion, found
that § 924(c) criminalized two separate offenses: (1) using or carrying a firearm *during and in
relation to* an applicable crime of violence, *and* (2) possessing a firearm *in furtherance of* an
applicable crime of violence.   Memo. Op. (Mar. 16, 2005), at 20.   The Court permitted the
government to proceed despite the potential for a duplicity issue because the government
proposed using a special verdict form to ensure that the jury considered the different alternatives
separately which was done in this case.    *Id.*   The issue before the Court is whether Palmer's
counsel was ineffective by permitting jury instructions and a verdict form that did not adequately
separate out the two offenses.    For the reasons described, the Court finds that the jury
instructions and verdict form properly supported Palmer's convictions under Counts IV and VIII
because Palmer was only convicted of using or carrying a firearm during and in relation to an
applicable crime of violence, and not of possessing a firearm in furtherance of an applicable
crime of violence.

The Court instructed the jury regarding Counts IV and VIII as follows:

So as to these counts, Counts 4, 8, 11, and 16, using and carrying a firearm *during*

10

> *a crime of violence*, these are the essential elements: . . . In order to sustain its burden of proof for the crime of used, brandished, carried and possessed a firearm as charged in Counts 4 and 8 of the indictment, or used, brandished, discharged, carried and possessed a firearm, as charged in Counts 11 and 16 of the indictment, *during and in relation to a crime of violence*, the government must prove the following two essential elements beyond a reasonable doubt . . . .

Tr. 8039:12—8040:1 (Jun. 21, 2005) (emphasis added).  Further, the Court went on to explain the essential elements, "One, the defendant and others committed the crime of armed bank robbery . . . ; and two, *during and in relation to the commission of that crime*, the defendant knowingly used, brandished, discharged, carried or possessed a firearm."  *Id.* at 8040:6-10.  The Court then went on to provide definitions for both elements.  First, the Court defined "crime of violence" as it related to the first element.  *Id.* at 8040:11-20.  Next, the Court defined and "knowingly," "uses or carries a firearm," "brandish," "discharge," and "possession."  *Id.* at 8040:21—8043:1.

After deliberations, the jury returned a verdict form finding Palmer guilty of both Counts IV and VIII.  In relevant parts, the verdict form read as follows: "**Count Four:** Using and carrying a firearm *during and in relation to* a crime of violence on or about January 22, 2004," Verdict Form at 2, ECF No. [476] (emphasis added), and "**Count Eight:** Using and carrying a firearm *during and in relation to* a crime of violence on or about March 5, 2004," *id.* at 4 (emphasis added).  Under both of these counts, the verdict form indicated that if the jury found the defendant guilty of that respective count, then the jury must answer a series of questions relative to the firearm involved.  In response to these questions, the jury separately found under Count IV that it was proven that: (1) Palmer used or carried a firearm or aided and abetted the use and carrying of the firearm; (2) Palmer possessed a firearm or aided and abetted the

possession of the firearm; and (3) Palmer brandished the firearm or aided and abetted the brandishing of the firearm. *Id.* at 2-3. The jury similarly found those three items proven as related to Count VIII. *Id.* at 4. Accordingly, from the verdict form it is clear that the jury found beyond a reasonable doubt that Palmer was guilty under both Count IV and VIII of using or carrying a firearm during and in relation to an applicable crime of violence. Pursuant to the verdict form, there was no option for the jury to find Palmer separately guilty of possessing a firearm in furtherance of an applicable crime of violence under either Counts IV or VIII because he was not charged with that offense.

On May 22, 2006, this Court entered a judgment convicting Palmer in part of Counts IV and VIII. The judgment indicates that Palmer was adjudged guilty under both Counts IV and VIII of "Using and Carrying a Firearm During Crime of Violence." Judgment in a Criminal Case at 1, ECF No. [636]. The judgment entered by the Court does not indicate that Palmer was found guilty of the separate offense of possessing a firearm in furtherance of an applicable crime of violence in violation of § 924(c).

To the extent that Palmer is now arguing that his counsel failed to object to the jury instructions and verdict form because they omitted the "in furtherance of an applicable crime of violence" language as required for a conviction of possession, the Court finds that Palmer cannot establish that he was prejudiced by his counsels' failure to raise this issue either at the time of trial or on appeal. *See also United States v. Lopez*, 569 Fed. App'x 109, 109 (3d Cir. 2014) (noting that the "in furtherance" element applies only if the charge is for "possessing" a firearm); *United States v. Brown*, 669 F.3d 10, 29 (1st Cir. 2012), *cert. denied*, 132 S. Ct. 2448 (2012) (affirming a conviction where the verdict form used the language "in connection with" in relation

to a section 924(c) violation, but the jury instructions properly defined "during an in relation to" a crime of violence, and "possess" a firearm "in furtherance of" a crime of violence).  Indeed, the jury returned guilty verdicts under the "using or carrying a firearm during and in relation to an applicable crime of violence" provision of the statute and the Court used the "during and in relation to" language in the jury instructions, in the verdict form, and in its judgment.  Accordingly, it is clear that even if counsel had objected to the failure to use the "in furtherance of" language related to the possession charge, Palmer still would have been convicted of both section 924(c) violations on the grounds that he used or carried a firearm during and in relation to an applicable crime of violence.  For this reason, the Court finds that Palmer's ineffective assistance of counsel claim related to the alleged duplicity of Counts IV and VIII is without merit.  Further, for the reasons described above, the Court concludes that Palmer's appellate counsel was not ineffective for failing to raise this challenge on appeal because Palmer has not shown that there is a reasonable probability that he would have succeeded on this argument if it had been raised on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."); *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014) (applying the *Strickland* standard to both trial and appellate counsel).

## B.  *Constructive Amendment Challenge to the Indictment*

Palmer next argues that his counsel failed to object to the constructive amendment to the indictment through the instruction and verdict form given to the jury.  Specifically, Palmer argues that his trial and appellate counsel were ineffective by failing to object to the inclusion of

language regarding semiautomatic assault weapons in the jury instructions and verdict forms for Counts IV and VIII.   Def.'s Memo. at 16-17.   Palmers argues that he was convicted of two counts of violating 18 U.S.C. § 924(c) based on this constructive amendment to the indictment that his counsel failed to challenge.   The Court finds that this argument is without merit for the reasons described herein.

Pursuant to 18 U.S.C. § 924(c)(1)(A), it is a crime to use or carry a firearm in relation to a crime of violence or a drug trafficking crime, or to possess a firearm in furtherance of such crimes.   The statute proscribes different sentencing requirements depending on the type of firearm used.   Specifically, if the firearm in question is a semiautomatic assault weapon, then the statute imposes a minimum 10-year term of imprisonment for the first violation of section 924(c), and if the firearm in question is a machinegun, then the statute requires a 30-year mandatory minimum sentence for a first violation of that provision. 18 U.S.C. § 924(c)(1)(B)(i)-(ii) (2004).[6]   For a second conviction of violating section 924(c), the statute proscribes a minimum term of imprisonment of 25 years, and a life term if the firearm in question is a machinegun.   18 U.S.C. § 924(c)(1)(C)(i)-(ii).

Here, Palmer was charged with and convicted of two counts of violating § 924(c)(1)(A), Counts IV and VIII.   Count IV related to the bank robbery that occurred on January 22, 2004, and Count VIII related to the armed robbery that occurred on March 5, 2004.   Superseding Indictment (Feb. 15, 2005), at 18, 22.   Specifically, it was alleged in the indictment that Palmer

---

[6] Unless otherwise specified, all citations in this subsection of the Memorandum Opinion refer to the 2004 version of the United States Code that was in effect at the time of that Palmer was originally indicted, even though there have not been significant changes to the relevant portions of the statute that would affect the analysis of this issue.

14

"knowingly used, brandished, carried and possessed a firearm, that is, *a machinegun*, during and in relation to and in furtherance of a crime of violence . . . , specifically, armed bank robbery . . . ." *Id.* at 18, 22 (emphasis added). The jury convicted Palmer under both Counts IV and VIII. Verdict Form at 2, 4, ECF No. [476]. However, the jury found that it was proven that the firearm in question under both counts was a semiautomatic assault weapon, but not a machinegun. *Id.* at 3, 4.

Palmer alleges that the "[i]t is quite clear from the jury instructions and verdict form that counts 4 and 8 of Petitioner's indictment was amended so as to allow Petitioner to be found guilty of a Semi-Automatic Assault Weapon, which is an element of a separate and distinctive offense . . . ." Def.'s Memo. at 15-16. Further, as the basis of his ineffective assistance of counsel claim, Palmer argues that had counsel challenged the alleged constructive amendment of the indictment either at the trial court level or on appeal, he would not have been convicted of two violations of § 924(c)(1)(A). Def.'s Memo. at 17. The government contends that there was no constructive amendment to the indictment and, instead, Palmer was simply convicted of a lesser included offense. Govt.'s Opp'n at 16-17. Accordingly, the government asserts that because there was no constructive amendment to the indictment, Palmer has not established that his counsel was ineffective with relation to this issue. Further, the government argues that the jury found all the requisite elements of the offenses proven beyond a reasonable doubt and, thus, Palmer's conviction under both counts was proper. *Id.* at 17.

The Court finds Palmer's ineffective assistance of counsel argument unavailing because counsel could not have successfully argued that the indictment was constructively amended by the instructions given and the jury verdict form provided for several reasons. First, the Court

concludes that Palmer's claim fails because he was charged in the indictment with violations of section 924(c) involving either a machinegun *or* a semiautomatic weapon.  While Palmer argues that inclusion of the word "machinegun" in the description in the indictment precludes a conviction of violating section 924(c) through use of a different type of firearm, the Court finds this argument flawed based on a reading of the indictment.  As Palmer correctly notes, the indictment for both Counts IV and VIII does reference "the firearm, that is, a machinegun." Superseding Indictment (Feb. 15, 2005), at 18, 22.  However, under both Counts, the indictment also indicates that the charge is: "Using and Carrying a Firearm During a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i)(ii)(iii), *(B)(i) and B(ii)*, and 2." *Id.* (emphasis added).  The Court notes that 18 U.S.C. § 924(c)(1)(B)(i) covers an offense involving an semiautomatic assault weapon and section 924(c)(1)(B)(ii) covers an offense involving a machinegun.  18 U.S.C. § 924(c)(1)(B)(i)-(ii).  Notably, section 924(c)(1)(B)(i) *only* addresses the sentencing implications if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon. *Id.* at (B)(i).  Therefore, its inclusion in the indictment can *only* signal that the grand jury was indicting Palmer on these charges as related to a machinegun or, in the alternative, a semiautomatic assault weapon.  Indeed, the inclusion of this statutory provision should have put Palmer on notice that he faced conviction under either provision of the statute.  *See United States v. Hitt*, 249 F.3d 1010, 1026 (D.C. Cir. 2001) ("'[B]asic principles of fundamental fairness' underlying the two key purposes of an indictment—notice to the defendant and protection against double jeopardy.").

The more specific language of the indictment supports this reading. Both Counts IV and VIII incorporate language from Count I of the indictment that provides a more detailed

description of the firearms alleged to have been used and carried by Palmer.[7]   Superseding

Indictment (Feb. 15, 2005), at 18, 22.   In the indictment it is charged that on January 22, 2004,

Palmer along with two codefendants "armed themselves with assault weapons and pistols," and

Palmer "was armed with a *MAC-11 semi-automatic assault weapon* to rob the Bank of

America."  *Id.* at 7-8 (emphasis added).   The indictment further charges that on March 5, 2005,

Palmer along with a codefendant "armed themselves with assault weapons and pistols," and

Palmer "was armed with a *semi-automatic MAC-11 assault weapon* to rob the Riggs Bank."  *Id.*

at 8-9 (emphasis added).   Here, the indictment clearly describes the weapons that Palmer was

charged with personally carrying in both Count IV and VIII as a semiautomatic assault weapon.

*See also* 18 U.S.C. § 921(a)(30) (defining the term semiautomatic assault weapon).  The issue of

---

[7] In his supplement to his § 2255 motion, Palmer states: "Trial counsel did not file a motion to strike the surplusage in sub-paragraph A,B,C,G,H, and K-W of paragraph 10 of Count One as set forth under Counts Four and eight. These sub-paragraphs were irrelevant to the offenses charges in Counts Four and Eight . . . ." Def.'s Amendment at 3.  The Court notes that while Palmer simply alleges that his trial counsel did not file such a motion, he does not assert that his counsel was deficient for failing to do so or that he was prejudiced in any way by the failure to do so.  *See generally id.*  Palmer appears to object to the incorporation by reference in Counts IV and VIII of the indictment to paragraph 10 of Count I of the indictment, which sets forth the overt acts related to the RICO conspiracy charge.  *See* Superseding Indictment (Feb. 15, 2005), at 7-13 (setting forth the Overt Acts of Count I); *id.* at 18 (incorporating the allegations of paragraph 10 of Count I into Count IV); *id.* at 22 (incorporating the allegations of paragraph 10 of Count I into Count VIII).  Palmer appears to object to the incorporation of some overt acts that he contends were unrelated Counts IV and VIII.  The Court notes that to the extent that Palmer is claiming that the reference to these subparagraphs in Counts IV and VIII should have been striken as surplusage, material can only be stricken if it is: (1) not relevant to the charges; (2) inflammatory; and (3) prejudicial.  *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998), *cert. denied* 525 U.S. 834 (1998).  Here, Palmer *only* asserts that the reference was not relevant and, accordingly, the Court cannot conclude that either trial or appellate counsel was deficient for failing to make this argument because Palmer himself does not contend that it also was inflammatory and prejudicial. Further, while Counts IV and VIII do incorporate all of paragraph 10 of Count I, the overt acts clearly specify the date and location of the act, the defendant(s) involved, and the weapon(s) used, such that the Court concludes incorporation of paragraphs not specifically related to Palmer are not prejudicial to him.

whether or not these weapons were also machineguns, i.e. "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," was submitted to the jury. 26 U.S.C. § 5845(b). Accordingly, the Court concludes that pursuant to the plain language of the indictment, Palmer was charged with two counts of violating section 924(c) through use of the weapons described in the indictment, which the grand jury charged were either machineguns *or* semiautomatic assault weapons.[8]

Second, assuming *arguendo* that the indictment was read to solely charge Palmer's use of

---

[8] The parties correctly note that the Supreme Court found in *United States v. O'Brien*, 560 U.S. 218 (2010), that the machinegun provision of section 924(c)(1)(A)(ii) was an element of the offense, rather than a sentencing factor, and, must be proved to the jury beyond a reasonable doubt. *Id.* at 224, 235. The Court notes that the trial in this matter was held five years prior to the 2010 ruling in *O'Brien*, and at that time the issue of whether the type of firearm was an element of the offense or a sentencing factor under this version of the statute was still unsettled. Indeed, prior to *O'Brien*, several circuits, including the D.C. Circuit, held that the machinegun provision of section 924(c) was a sentencing enhancement to be determined by the judge and not a separate element of the offense to be determined by the jury. *United States v. Cassell*, 530 F.3d 1009, 1016-17 (D.C. Cir. 2008), *cert. denied*, 555 U.S. 1155 (2009); *see also United States v. Ciszkowski*, 492 F.3d 1264, 1268-69 (11th Cir. 2007); *United States v. Gamboa*, 439 F.3d 796, 811-12 (8th Cir. 2006), *cert. denied*, 549 U.S. 1042 (2006); *United States v. Avery*, 295 F.3d 1158, 1169-71 (10th Cir. 2002), *cert. denied*, 537 U.S. 1024 (2002); *United States v. Harrison*, 272 F.3d 220, 225-26 (4th Cir. 2001), *cert. denied*, 537 U.S. 839 (2002); *United States v. Sandoval*, 241 F.3d 549, 550-52 (7th Cir. 2001), *cert. denied*, 534 U.S. 1057 (2001). Nevertheless, the Court in this matter submitted the issue to the jury which can be viewed either as the Court requesting an advisory opinion from the jury as to the type of weapon for sentencing purposes, or as the Court treating the type of firearm as an element of the offense. *See* Tr. 8043:5-18 (Jun. 21, 2005) (instructing the jury on the definitions of both a semiautomatic assault weapon and a machinegun); *Id.* at 8058:7-14 (indicating that the verdict form separates out a jury finding relating to both the semiautomatic assault weapon and a machinegun). Regardless, the Court cannot conclude that trial counsel acted outside of professional norms by failing to argue that the type of firearm was an element of the offense as declared in *O'Brien* given the uncertainty among the Circuits on this issue at the time of trial. *See United States v. Tchibassa*, 646 F. Supp. 2d 144, 151 (D.D.C. 2009) ("Failure to predict a change in the law does not generally render counsel's performance deficient.").

machineguns in relation to the section 924(c) counts, the Court finds that the jury instructions related to Counts IV and VIII and the verdict form did not constructively amend the indictment. "Some divergences between indictment and proof . . . plainly have a constitutional dimension." *United States v. Baugham*, 449 F.3d 167, 175 (D.C. Cir. 2006). Indeed, some divergences "surely relate to an accused's Fifth Amendment right not to be tried for a felony 'unless on a presentment or indictment of a Grand Jury' and to his Sixth Amendment right 'to be informed of the nature and cause of the accusation.'" *Id.* Courts have recognized two types of erroneous divergences, variances and amendments. *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir. 1969). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." *Id.* A variance, on the other hand, "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.*

Palmer contends that his trial counsel should have objected to the jury instructions and the verdict form related to Counts IV and VIII that allowed the jury to make a finding that Palmer carried a semiautomatic assault weapon rather than a machinegun.

"To support a claim of constructive amendment, [defendant] would have needed to show that 'the evidence presented at trial *and* the instructions given to the jury so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment.'" *United States v. Toms*, 396 F.3d 427, 436 (D.C. Cir. 2005) (quoting *United States v. Sayan*, 968 F.2d 55, 59 (D.C. Cir. 1992)). However, not every divergence from the terms of indictment constitutes a constructive amendment. "Ultimately,

whether an indictment has been constructively amended comes down to whether 'the deviation between the facts alleged in the indictment and the proof [underlying the conviction] undercuts the[] constitutional requirements' of the Grand Jury Clause: allowing a defendant to prepare his defense and to avoid double jeopardy." *United States v. Bastian*, 770 F.3d 212, 220 (2d Cir. 2014) (quoting *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007)).   Here, the jury instructions and the verdict form did not undercut Palmer's ability to prepare for trial.  Indeed, he was aware that he was charged with, and needed to prepare a defense for, two violations of section 924(c) related to bank robberies that occurred on two specified dates.  Furthermore, given the specificity of the indictment, there were not double jeopardy concerns because the incidents giving rise to the section 924(c) charges were clearly laid out.

Given that Palmer's alleged use of both a semiautomatic assault weapon and a machinegun in relation to the counts under section 924(c) were included in the indictment, the Court concludes that Palmer has failed to demonstrate that either his trial or appellate counsel committed an error by failing to challenge the alleged constructive amendment to the indictment, nor can Palmer demonstrate that he was prejudiced by counsels' failure to raise this claim. Accordingly, the Court concludes that Palmer is not entitled to relief on his ineffective assistance of counsel claims because the jury instruction and the verdict form did not constructively amend the indictment.

**C.** *Confrontation Clause Challenge*

Finally, Palmer argues that his trial and appellate counsel rendered ineffective assistance of counsel by "failing to object and raise DNA Expert Heather Suebert['s] Testimonial Statement that was in violation of Petitioner's Sixth Amendment Rights to Confront all witnesses against

him."[9]  Pl.'s Mot. at 7.  The Court finds that this claim is without merit for the reasons described below.

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), a case decided after this matter was tried, the Supreme Court of the United States held that affidavits showing the results of forensic analyses performed on seized substances are testimonial statements and, accordingly, analysts are witnesses under the Confrontation Clause of the Sixth Amendment.  *Id.* at 309-11. The Court clarified that affidavits "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id.* at 311 (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)), are testimonial statements and, accordingly, the authors of such affidavits are witnesses for the purposes of the Confrontation Clause of the Sixth Amendment.  *Id.* at 311.  The Court found that "[a]bsent a showing that the [authors of the affidavits] were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the [authors of the affidavits] at trial.'"  *Id.*

Here, Palmer appears to contend that his Sixth Amendment right was violated by the

---

[9] The Court notes that Palmer only raises this claim in his motion as a third ground for ineffective assistance of counsel but does not expound on this ground in his memorandum in support of his motion, in his supplement to his motion, or in his reply brief.  *See generally* Def.'s Memo., ECF No. [786]; Def.'s Amendment, ECF No. [793]; Def.'s Reply, ECF No [816].  As a result, it is unclear to the Court whether this argument has been abandoned by Palmer. Furthermore, the government did not address this issue in its opposition.  *See generally* Govt.'s Opp'n, ECF No. [800]. Nevertheless, the Court notes that this argument was raised by one of Palmer's codefendants in his § 2255 motion and was addressed by the government in its opposition to that motion.  Accordingly, the Court shall consider the government's briefing on the issue as well as its own independent review of the issue.  *See United States v. Aaron Perkins*, No. 04cr355-06, Govt.'s Opp'n to Def.'s Mot. to Vacate, Set Aside, or Correct Sentence, at 13-14, ECF No. [798].

admission of testimonial statements made by Suebert, the government's DNA expert, at trial. Suebert testified at trial on May 26, 2005, and June 1, 2005, and was cross-examined by Palmer's trial counsel.  *See generally* Tr. 5381:21—5388:18 (Jun. 1, 2005) (cross examination of Heather Suebert by Palmer's trial counsel). Suebert's notes and reports do not raise Confrontation Clause issues because they were not admitted into evidence at trial, but rather were provided to the parties prior to trial to allow the parties to raise specific objections to the admissibility of the DNA evidence.[10]  *See Williams v. Illinois*, -- U.S. --, --, 132 S. Ct. 2221, 2228 (2012) ("When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.").  As the Court noted during trial: "Okay. We have not admitted her report [into evidence].  That's why I just want to make sure that, in terms of the record, we hook it up to whatever exhibits we've actually admitted."  Tr. 5370:8-11 (Jun. 1, 2005).

---

[10] The parties made several arguments related to the admissibility of the DNA evidence at trial.  *See* Defs.' Jt. Objections to Govt.'s Proposed DNA Evid., ECF No. [248]; Govt.'s Opp'n to Defs.' Jt. Objections to Govt.'s Proposed DNA Evid., ECF No. [257]; Govt.'s Supp. to Opp'n to Defs.' Jt. Objection to Govt.'s Proposed DNA Evid., ECF No. [259]; Palmer's Resp. to Govt.'s DNA Pleadings, ECF No. [279]; Morrow's Reply to Govt.'s Supp. Opp'n to Defs.' Jt. Objections to Govt.'s Proposed DNA Evid., ECF No. [282]; Govt.'s Reply to Def. Palmer's & Morrow's Resp. to Govt.'s Proposed DNA Evid., ECF No. [288]; Perkins' Mot. to Exclude Contaminated DNA Samples Obtained from Brinkley Road Search, ECF No. [363]; Govt.'s Opp'n to Def. Perkins' Mot. to Exclude Allegedly Contaminated DNA Samples Obtained from Brinkley Road Search, ECF No. [377]; Perkins' Mot. to Exclude Contaminated DNA Samples Obtained from Brinkley Road Search, ECF No. [381]; Memo. Op. (Apr. 25, 2005), ECF No. [305].

Given that the evidence in question does not raise Confrontation Clause concerns because it was not admitted into evidence at trial, because it was related by Suebert solely for the purpose of explaining the assumptions on which her opinion rested, and because defense counsel was presented with the opportunity to cross-examine Suebert at trial, the Court finds that both trial and appellate counsel did not act in an objectively unreasonable manner by failing to raise this challenge.  Further, the Court finds that Palmer has not established that he is prejudiced in any way by either trial or appellate counsels' failure to raise this issue.

### D.  *Certificate of Appealability*

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either issue or deny a certificate of appealability.  Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a).  By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing demands that Palmer demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For the reasons set forth above, the Court concludes that Palmer has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court.  To the extent Palmer intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22(b).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds no reason to set aside Palmer's conviction or sentence at this time.  Accordingly, Palmer's [785] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED.  To the extent Palmer intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

An appropriate Order accompanies this Memorandum Opinion.

***This is a final, appealable order.***

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE